IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HERBERT T. ROBERTSON, SR.,
Plaintiff,

v.                                            Civil Action No. 3:18-cv-00371-JAG

THE SCHOOL BOARD OF THE
CITY OF RICHMOND, VIRGINIA, et al.,
Defendants.

## OPINION

The plaintiff, Herbert Robertson, Sr., says that two Richmond Public Schools ("RPS") Department of Safety and Security ("DSS") officers unreasonably seized him in violation of the Fourth Amendment. Based on this allegation, the plaintiff brought this action under 42 U.S.C. § 1983 against the School Board of the City of Richmond, Virginia ("the Board"), and RPS Superintendent Jason Kamras in his official capacity, among others. The Board and Kamras have moved to dismiss Counts Three and Four of Robertson's complaint for failure to state a claim. Robertson agrees that the Court should dismiss Counts Three and Four against Kamras because they are duplicative of the claims against the Board,[1] so the Court will dismiss those Counts against Kamras. Because Robertson alleges a plausible claim for relief against the Board in Counts Three and Four, the Court will deny the motion as to the Board.

## I. FACTS ALLEGED IN THE COMPLAINT

Robertson works as a teacher's assistant at Mary Scott Preschool Center. On November 6, 2017, school administrators called Robertson to the front office. When Robertson arrived, DSS Lieutenants Dandridge Hawkes and Patricia White told him that they received a report that

---

[1] *See* Mem. Opp'n Mot. Dismiss, at 4 n.1.

1

he had come to school smelling like alcohol. Hawkes said that "protocol" required Hawkes and White to detain Robertson in the office until a school administrator arrived. (Compl. ¶ 25.)

Johnnye Massenburg-Johnson, the principal of Mary Scott, arrived at the office approximately fifteen minutes later. Massenburg-Johnson reiterated the report against Robertson and told him that RPS policy required a blood alcohol content ("BAC") test. Hawkes instructed Massenburg-Johnson to "read [Robertson] his rights." (*Id.* ¶ 36.) In response, Massenburg-Johnson read and gave Robertson a copy of the Drug and Alcohol Free Workplace Policy. The policy requires employees suspected of a drug or alcohol violation to submit to testing or subject themselves to dismissal. When Robertson agreed to the testing, he believed it would take place at the school.

Hawkes and Massenburg-Johnson, however, told Robertson that they could not perform the testing at the school and that he needed to go to Retreat Doctors' Hospital for testing. Showing no signs of intoxication, Robertson offered to drive himself to the hospital. Massenburg-Johnson and White told Robertson that he could not drive himself and that DSS officers would take him to Retreat. Hawkes said that "protocol" required Robertson's continued detention and transportation for testing. (*Id.* ¶ 51.)

Hawkes and White drove Robertson to Retreat, where staff performed BAC and drug tests. Following the testing, Hawkes and White drove Robertson to the RPS Department of Human Resources office, where a representative provided Robertson with a letter placing him on leave pending the results of his drug and alcohol tests. Robertson's BAC measured 0.0, and he tested negative for all seven listed drugs.

The Board and Kamras have moved to dismiss Counts Three and Four of Robertson's six-count complaint.[2] Count Three alleges that the defendants violated the Fourth Amendment based on custom or usage with the force of law, and Count Four alleges that the defendants violated the Fourth Amendment based on failure to train.

## II. DISCUSSION[3]

Courts may hold a municipality liable for the actions of its officers under 42 U.S.C. § 1983 only if the governmental body itself caused the deprivation of the plaintiff's rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Under *Monell*, a plaintiff can prevail if (1) he suffered a deprivation of his federal rights, and (2) the execution of the government's "policy or custom" inflicted the injury. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). A locality can develop a policy or custom in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law.

---

[2] The remaining counts assert additional Fourth Amendment violations and related state law claims. The Board and Kamras have not moved to dismiss those counts.

[3] The Board and Kamras have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

*Id.* (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Robertson proceeds under the fourth theory in Count Three, and under the third theory in Count Four.

## *A. Count Three*

A governmental custom "may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 473. "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). "To establish constructive knowledge, a plaintiff can show any combination of [the following]: the widespread extent of the practices, general knowledge of their existence, or an official action of responsible policymakers." *November v. Chesterfield Cty.*, No. 3:17-cv-113-JAG, 2017 WL 4922017, at *4 (E.D. Va. Oct. 31, 2017).

Robertson sufficiently states a claim showing a practice "so persistent and widespread . . . as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 473. Robertson alleges the following facts to support his claim. Based solely on a report that Robertson arrived at school smelling like alcohol, Hawkes and White detained him in the administrative office. They told Robertson that "protocol" required them to detain him in the office until Massenburg-Johnson's arrival. (Compl. ¶ 25.) Further, Hawkes and White told Robertson that RPS "protocol" required them to continue to detain and transport him to Retreat for BAC and drug testing. (*Id.* ¶ 51.)

The Board correctly argues that "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes."

4

*Lytle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 220) (affirming the district court's findings on a motion for summary judgment). While Robertson "will need to show more than just a single or isolated incident to ultimately *prevail* in his claim or to survive a motion for *summary judgment*, this Court is only evaluating if [Robertson] has asserted enough to prevail on a motion to *dismiss*." *Nichols v. Cty. Comm'n*, No. 3:18-0266, 2018 WL 4016311, at *5 (S.D. W. Va. Aug. 22, 2018). Indeed, "for the purposes of surviving a motion to dismiss, a plaintiff 'need not plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.'" *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 542 (E.D. Va. 2015) (quoting *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994)).

Robertson's allegations that RPS "protocol" permits DSS officers to detain employees and subject them to BAC testing based on scant evidence of misconduct allow the Court to "draw a reasonable inference that there may have been other instances of unconstitutional conduct by [RPS] officials." *Nichols*, 2018 WL 4016311, at *5. Robertson, therefore, alleges a plausible claim against the Board based on custom or usage with the force of law.

### B. Count Four

To impose municipal liability for failure to train, Robertson must show that the Board's failure to train caused the constitutional violation.[4] Local governments qualify as "persons" under § 1983, and plaintiffs may sue them directly for constitutional violations. *Monell*, 436 U.S. at 690. Local governments, however, face liability only when their agents inflict a constitutional injury while executing the local government's policy or custom. *Id.* at 694. In other words, a plaintiff must show that "the municipality *itself* cause[d] the constitutional

---

[4] The Board does not dispute that Robertson alleges a constitutional violation.

5

violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, local governments do not bear liability for the constitutional torts of their employees under the doctrine of respondeat superior. *Monell*, 436 U.S. at 691. Moreover, liability will not attach when one employee "happen[s] to apply the policy in an unconstitutional manner." *City of Canton*, 489 U.S. at 387.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights" may constitute "policy" pursuant to *Monell*. *Connick*, 563 U.S. at 61. To recover under this "tenuous" theory of liability, *id.*, "a plaintiff must plead and prove that: (1) the [local government] subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the [local government] failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004). Because Robertson alleges that Hawkes and White violated his Fourth Amendment right to be free from unreasonable seizures, he has satisfied the first prong.

The deliberate indifference element creates "a stringent standard of fault," *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997), which a plaintiff cannot plead generally, *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011). Indeed, a plaintiff must identify a "specific deficiency rather than general laxness or ineffectiveness in training." *Spell*, 824 F.2d at 1390. Furthermore, a plaintiff must show that the municipality disregarded a known or obvious consequence of its decision. *Brown*, 520 U.S. at 410. A plaintiff can allege deliberate indifference by pleading facts to indicate that policymakers knew about and acquiesced in "a pattern of constitutional violations." *Mitchell*, 308 F. Supp. 2d at 704. Alternatively, a plaintiff can allege that the city failed to train employees about an "obvious constitutional duty that the

particular employees are certain to face." *Id.* To impose liability under the latter method, a plaintiff must establish that "the underlying constitutional right is quite clear and is one that the subordinates reasonably can be expected to confront with some regularity." *Id.* at 705-06. Robertson appears to plead both methods, so the Court will address each in turn.

The factual allegations that support Court Three also support the first method of proving deliberate indifference: a pattern of constitutional violations. *Cf. Moody*, 93 F. Supp. 3d at 543 (finding that the same allegations supporting § 1983 municipal liability under a final policymaker decision theory also supported municipal liability under a custom or usage theory). In his complaint, Robertson alleges that Hawkes and White twice characterized their actions as "protocol." (Compl. ¶ 119.) Given this characterization, Robertson asserts that this practice "is sufficiently widespread such that RPS policymakers have either actual or constructive notice of" its existence. (*Id.*) Despite that knowledge, the Board allegedly provided no training to DSS officers "involving constitutional limitations in seizing employees for alleged violations of RPS policy"—a specific deficiency.[5] (*Id.* ¶ 124.) Taken together, these factual allegations "nudge[] [Robertson's claim] across the line from conceivable to plausible," allowing the Court to reasonably infer that the Board actually or constructively knew about a widespread pattern of constitutional violations. *Twombly*, 550 U.S. at 570.

Robertson also alleges sufficient facts to proceed under the second method of proving deliberate indifference because his complaint raises an "an obvious constitutional duty that [RPS DSS line officers] are certain to face." *Mitchell*, 308 F. Supp. 2d at 704. This case implicates a clear constitutional duty that presents an obvious need for training: how to seize an employee

---

[5] Robertson's Freedom of Information Act results showed no training materials for DSS officers "in the federal constitutional requirements surrounding seizing and detaining individuals suspected of violating RPS alcohol and drug policy." (*Id.* ¶ 121.)

7

suspected of violating RPS policy within constitutional limits. RPS employs security officers in part to enforce RPS policy. *Cf. City of Canton*, 489 U.S. at 390 n.10. As Robertson alleges, "it [is] certain that RPS DSS personnel" will seize employees for alleged violations of RPS policy in the course of their official duties. (Compl. ¶ 124.) Thus, an "obvious need" exists for training on the circumstances under which an officer may effect a seizure. By failing to implement this training, the Board "can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Although thin, Robertson's allegations satisfy the deliberate indifference element under either method to survive a motion to dismiss.

Finally, the plaintiff must show a "sufficiently close causal link" between the training deficiency and the alleged violation—that the violation was "almost bound to happen." *Spell*, 824 F.2d at 1390. Because Hawkes and White twice characterized their actions as "protocol," (Compl. ¶ 119), the Court may reasonably infer that his actions stemmed from the Board's failure to train its officers, not the officers' personal choice. In other words, Robertson adequately alleges that the Board "itself cause[d] the constitutional violation." *City of Canton*, 489 U.S. at 385.

Accordingly, Robertson alleges a plausible failure to train claim. Although Robertson "need not plead the multiple incidents of constitutional violations" to survive a motion to dismiss, *Moody*, 93 F. Supp. 3d at 542, the Court emphasizes that he must show more than he pleads in the complaint to prevail on the merits.

### III. CONCLUSION

The plaintiff alleges a plausible claim for relief in Counts Three and Four against the Board. Accordingly, the Court will grant in part and deny in part the motion to dismiss. The

8

Court will dismiss Counts Three and Four as to Kamras, but Counts Three and Four will proceed against the Board.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 1 February 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge